```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
CATHY WATKINS,                                :
                        Plaintiff,            :
         -v-                                  :
CITY OF NEW YORK, et al.,                     :
                        Defendants.           :
------------------------------------------------------------------- :
ERIC FIELD,                                   :
                        Plaintiff,            :
         -v-                                  :
THE CITY OF NEW YORK, et al.,                 :       14-CV-0887 (JMF)
                        Defendants.           :       14-CV-1378 (JMF)
------------------------------------------------------------------- :   14-CV-1653 (JMF)
MICHAEL COSME,                                :       14-CV-1654 (JMF)
                        Plaintiff,            :       14-CV-1655 (JMF)
         -v-                                  :
THE CITY OF NEW YORK, et al.,                 :       MEMORANDUM OPINION
                        Defendants.           :            AND ORDER
------------------------------------------------------------------- :
CARLOS PEREZ,                                 :
                        Plaintiff,            :
         -v-                                  :
THE CITY OF NEW YORK, et al.,                 :
                        Defendants.           :
------------------------------------------------------------------- :
DEVON AYRES,                                  :
                        Plaintiff,            :
         -v-                                  :
THE CITY OF NEW YORK, et al.,                 :
                        Defendants.           :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

These cases, familiarity with which is assumed, arise out of prosecutions in the 1990s for two murders committed in the Bronx. Six people were convicted in New York State court of committing one or both of the murders, but all of their convictions have since been overturned. Five of the criminal defendants are Plaintiffs in the current actions, which allege that members of the New York City Police Department and others (collectively, the "City") violated their civil

rights.[1] Now pending is a motion filed by the judge who presided over two of the underlying murder trials, Justice William J. Donnino, and his then-law secretary, Justice Salvatore J. Modica, to quash deposition subpoenas served upon them by the City. (*See, e.g.*, 14-CV-887, Docket No. 60). For the reasons explained below, that motion is GRANTED, and the subpoenas are quashed.

Although the Second Circuit has not yet addressed the standard to be used when a party seeks to compel a judge to testify about a case over which he presided, the parties agree that the Court should follow the standard set forth in *United States v. Roth*, 332 F. Supp. 2d 565, 568 (S.D.N.Y. 2008). (Mem. Law Supp. Mot. To Quash Dep. Subpoenas Served Hon. William C. Donnino & Hon. Salvatore J. Modica (14-CV-887, Docket No. 62) ("Donnino & Modica Mem.") 7; Defs.' Mem. Law Opp'n Mot. To Quash Dep. Subpoenas Served Hon. William C. Donnino & Hon. Salvatore J. Modica (Docket No. 66) ("City Mem.") 4-5). Under that standard, a judge (or law secretary, *see Olivia v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988)) may be compelled to testify only if: "he (1) possesses factual knowledge, (2) that knowledge is highly pertinent to the jury's task, and (3) is the only possible source of testimony on the relevant factual information." 332 F. Supp. 2d at 568 (citing *United States v. Frankenthal*, 582 F.2d 1102, 1108 (7th Cir. 1978)); *accord Heather v. McBride*, 650 S.E.2d 104, 113 (W.V. 2006) ("The party seeking the judge's testimony must show that the testimony it seeks to introduce is material and favorable to its case, that the testimony is the only possible source of testimony on the relevant information, and, if the case is being tried before a jury, that the testimony is highly pertinent to the jury's task."). Further, while a judge may be compelled to testify about his factual knowledge if the above test is satisfied, he is absolutely immune from testifying about his mental processes. *See Roth*, 332 F. Supp. 2d at 568; *see also*

---

[1] The sixth criminal defendant also brought suit, but that case was settled. *See Vazquez v. City of New York*, No. 10-CV-6277. A seventh case, brought by the daughter of Plaintiff Eric Field, was previously dismissed. *See Morales v. City of New York*, No. 14-CV-02896.

*Frankenthal*, 582 F.2d at 1108.

In this case, the City seeks to depose Justice Donnino and Justice Modica with respect to five categories of information: (1) observations about the demeanor of Cathy Gomez (a key witness in the underlying criminal trials who now claims that she was coerced by law enforcement into testifying falsely); (2) clarification of an incident that the City believes to have been an attempt by Plaintiffs to trick Gomez into disclosing information about another government witness (the "Judge's Secretary Incident"); (3) confirmation of the fact that Justice Donnino issued an arrest warrant to secure Gomez's testimony; (4) observations of the audience during the trials, including observations of any threatening behavior directed towards prosecution witnesses; and (5) a description of the contents of a videotape, which apparently no longer exists, played during one of the trials. (Donnino & Modica Mem. 3-4; City Mem. 5).

The City's arguments with respect to the first and fourth categories of information — concerning observations of Cathy Gomez's demeanor and the audience during trial — fail for largely the same reason. Put simply, as the City effectively concedes, neither Justice Donnino nor Justice Modica is "the only possible source of testimony" on those subjects. *See Roth*, 332 F. Supp. 2d at 568 . (City Mem. 5). Gomez's demeanor, including the fact that she was distressed, is described several times in the trial transcript. (*See, e.g.*, Decl. Philip R. DePaul Opp'n Mot. To Quash Dep. Subpoenas Served Hon. William C. Donnino & Hon. Salvatore J. Modica (14-CV-887, Docket No. 65) ("DePaul Decl."), Ex. A at 24; *id.*, Ex. B at 711, 713). Similarly, many of the "unusual incidents" involving the audience at the criminal trials that the City cites are also reflected in the trial transcript. (*Id.*, Ex. F. at 111; *see also* June 11, 2015 Ltr. 4).[2] In any event, information

---

[2] Although the City argues that "even if all of the relevant facts were grounded in the record, the transcripts . . . are hearsay" (City Mem. 3), the relevant information may well fall within a hearsay exception. *See, e.g.*, Fed. R. Evid. 803(1) (present sense impression); Fed. R. Evid. 807

3

about Gomez's demeanor and the behavior of the audience may well be obtainable from others who attended trial, including the court reporters or other court personnel. The City speculates that the other court personnel might not have noticed Gomez's demeanor because they were too busy performing their duties and were not obligated to follow the "substance" of the proceedings, and argues that Justice Donnino and the relevant witness were "the only people who may have witnessed visual intimidation" because they were "the only people in the courtroom facing the audience." (City Mem. 5 n.5, 9-10). But there is no indication that the City even tried to obtain the information it seeks from the other potential sources. Given that testimony from judges is disfavored, the City was required to exhaust those other options first. *Cf. Ciarlone v. City of Reading*, 263 F.R.D. 198, 203-04 (E.D. Pa. 2009) (granting a motion to quash the deposition of a judge regarding a statement made during the application for an administrative search warrant because the same information could be obtained from the person who made the statement, who had not even been deposed, and the defendant, among others).

      The City's arguments with respect to the Judge's Secretary Incident also fall short. In an *in camera* hearing during the criminal trial of Eric Field, Gomez testified that Field told her to expect a visit from the "judge's secretary" and that a "light skinned," "Puerto Rican" man later came to her house, told her that he had "come from the courts," and asked her to disclose the location of a prosecution witness. (DePaul Decl., Ex. A at 13-14). At the hearing, the assistant district attorney prosecuting the case (the "ADA") asked Gomez to confirm that the visitor was "[n]ot this gentleman here" — presumably (though not necessarily) pointing to Justice Donnino's then-law secretary, Justice Modica — which she did. (DePaul Decl., Ex. A at 14). The City believes that Field was attempting to trick Gomez into revealing the witness's location, and that testimony from

---

(residual exception). The Court need not, and does not, decide that question here.

Justice Donnino is necessary to confirm both that the ADA was pointing to Justice Modica and that he never sent Justice Modica (or anybody else, for that matter) to speak with Gomez.  (June 11, 2015 Ltr. 3).  It is true that this information is factual in nature, and that Justice Donnino is the only person who could confirm that he did not send anyone to visit Gomez.  But the Court is unpersuaded that the evidence sought qualifies as "highly pertinent."  *Roth*, 332 F. Supp. 2d at 568.  It is collateral to the issues in these cases — namely, whether there was probable cause to arrest and prosecute Plaintiffs here for one or both of the murders.  And while it could conceivably provide impeachment material with respect to Gomez, it has only marginal value for that purpose given the transcript of the *in camera* hearing (not to mention the significant amount of other evidence that the City can use to impeach Gomez).

The City also fails to justify its request for testimony from Justice Donnino about the arrest warrant.  The City believes that it should be permitted "to question Justice Donnino about the fact that he — not the defendants — secured Ms. Gomez's presence at trial through the issuance of an Arrest Warrant."  (City Mem. 8-9).  But the fact that Justice Donnino signed an arrest warrant, as well as his admonition to Gomez that he would issue another arrest warrant if she failed to appear at trial, is already in the record.  Justice Donnino, therefore, is not "the only possible source of testimony on the relevant factual information," *Roth*, 332 F. Supp. 2d at 568; indeed, testimony that "it was he who ordered Gomez to testify" (City Mem. 9) would be superfluous.  And to the extent that the City seeks information about why Justice Donnino signed the arrest warrant, that line of questioning would intrude on Justice Donnino's thought processes, and is therefore impermissible.  *See Auguste v. Sullivan*, No. 03-CV-2256 (PAB) (KLM), 2009 WL 790135, at *1 (D. Colo. Mar. 20, 2009) (holding that a judge could not be compelled to testify about "whether the district court would issue search warrants on affidavits with stale information" and whether the government

"disclosed that the evidence they contended provided probable cause . . . was five years old" because "such questions are so directly tied to, and so strongly infer, the mental processes that [the judge] used in authorizing the warrant").

Finally, the Court is unpersuaded by the City's argument for why it should be entitled to depose Justice Donnino about the contents of a videotape that was introduced in one of the underlying criminal trials, but which is apparently now missing. (City Mem. 10; June 11, 2015 Ltr. 4). The City would like to question Justice Donnino about what he "recalls" about the contents of the videotape (City Mem. 10), in the hope that he can shed light on "[w]hether the victim was captured on [the tape] and with whom" (June 11, 2015 Ltr. 4). The City has not demonstrated, however, that Justice Donnino is likely to recall anything useful. Given the passage of time, it is highly unlikely he can. Moreover, the trial transcript indicates that Justice Donnino could not see the faces of the people in the videotape. (DePaul Decl., Ex. G at 730).[3] Accordingly, the City has not proved that Justice Donnino has any "factual knowledge" that would is relevant, let alone "highly pertinent." *Roth*, 332 F. Supp. 2d at 568.

For the foregoing reasons, the motion to quash is GRANTED and the subpoenas served on Justice Donnino and Justice Modica are quashed. The Clerk of Court is directed to terminate Docket No. 60.

SO ORDERED.

Dated: August 13, 2015
       New York, New York

                                                     JESSE M. FURMAN
                                                    United States District Judge

---

[3] Although the City submitted Exhibit G with the courtesy hard copies of its motion papers, it appears not to have filed the Exhibit on the public docket. No later than **one week** from the date of this Memorandum Opinion and Order, the City shall file Exhibit G on ECF.